# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

| | |
|---|---|
| United States of America<br>v.<br>Bertha Alicia Castillo<br>~~Bertha Castillo~~<br>COB: USA (NC 10/03/2025)<br>DOB: 08/27/1968<br><br>*Defendant(s)* | Case No. 7:25-mj-2506 |

United States Courts
Southern District of Texas
FILED
*October 02, 2025*
Nathan Ochsner, Clerk of Court

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **October 2, 2025** in the county of **Hidalgo** in the **Southern** District of **Texas**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S. Code § 554 | Smuggling goods from the United States |
| 18 U.S. Code § 1956 | Laundering of monetary instruments |
| 8 U.S. Code § 1324(a)(1)(A)(iv) | Encouraging or inducing an alien to reside in the United States unlawfully, knowing or in reckless disregard of the fact that such residence is or would be in violation of law |

This criminal complaint is based on these facts:
See Attachment A

☐ Continued on the attached sheet.

/S/ Mario Godinez
*Complainant's signature*

Mario Godinez Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/02/2025-9:09p.m.

*Judge's signature*

City and state: McAllen, Texas

Juan F. Alanis, US Magistrate Judge
*Printed name and title*

## Attachment A

For purposes of this report, any confidential informant ("CI") and/or undercover agent ("UCA") mentioned will be referred to in the masculine, regardless of their gender. On August 8, 2025, under the direction of HSI Special Agents, the CI contacted CASTILLO via voice call using the WhatsApp messaging application. This conversation was recorded and monitored by HSI Special Agents. During the call, CASTILLO explicitly stated that he avoids reporting merchandise entry into Mexico to evade detection by authorities. CASTILLO further discussed making payments to various parties, including corrupt Mexican law enforcement officials, to facilitate uninterrupted transport. Specifically, CASTILLO mentioned paying $20,000 pesos to Harfuch's police department, a newly implemented police force in Mexico that is reportedly incorruptible. For reference: In 2025, Omar García Harfuch, serving as Mexico's Secretary of Security and Citizen Protection, established the National Operations Unit (UNO), an elite police force focused on combating organized crime. The unit is primarily composed of personnel from the former Federal Police and operates directly under his command.

During the conversation CASTILLO admits to compensating clients 50% of the value of merchandise if it is seized during transport. Castillo states to the CI that he transports without proper authorization or "codes", to reduce the risk of detection. CASTILLO stated that he works alongside his wife, identified as BERTHA. According to CASTILLO, BERTHA Castillo ("BERTHA") manages the sales while he oversees shipping of the merchandise.

On August 26, 2025, HSI Special Agents, utilizing an undercover agent ("UCA") engaged in a voice call with an individual identified as BERTHA via the WhatsApp messaging application. During the conversation, the UCA discussed arrangements for a cash payment to be made for the purchase of used clothing intended for shipment to Mexico. BERTHA indicated that she could

receive the cash payment at her warehouse (Oro Ropa Usada) and stated that she would be accompanied by her husband, CASTILLO, during the transaction.

On August 26, 2025, HSI Special Agents, utilizing an UCA, carried out an operation to purchase used clothing from CASTILLO at Oro Ropa Usada. During the operation, surveillance was conducted by Customs and Border Protection ("CBP") Air and Marine Operations ("AMO") at the primary residence of CASTILLO. At approximately 7:16 PM, AMO agents observed CASTLLO'S Jeep arrive at Oro Ropa Usada, where the UCA was already present.

At approximately 7:20 PM, the UCA entered Oro Ropa Usada, escorted by CASTILLO and BERTHA. The UCA provided CASTILLO and BERTHA with $20,742.00 in United States currency for the purchase and transport of used clothing into Mexico. The UCA explained that his job was to collect money from Houston and transport it south, while earning a 1-2% commission on the total amount transported. The UCA observed CASTILLO and BERTHA counting the currency, after which BERTHA placed the money into a black handbag in her possession. CASTILLO informed the UCA that the used clothing would be shipped to Mexico approximately one week after the payment date.

At approximately 7:38 PM, AMO agents observed the black Jeep departing Oro Ropa Usada and continued surveillance. At approximately 7:42 PM, AMO agents observed the black Jeep arrive at primary residence in McAllen, Texas. HSI special agents ("SA") observed BERTHA exit the passenger side of the Jeep, carrying a black handbag containing the $20,742.00, and enter their residence.

On September 2, 2025, HSI SAs conducted surveillance at Oro Ropa Usada and observed a black semi tractor pulling a brown trailer departing the lot of Oro Ropa Usada. HSI SAs maintained surveillance of the Semi tractor and trailer as it traveled to the Pharr Port of Enty ("POE") in

Pharr, Texas. During this time, HSI SAs observed CASTILOO's Black Jeep escorting the semi tractor and trailer to the POE.

At approximately 8:14 PM, CBP officers interdicted the semi tractor and trailer as it attempted to exit the U.S. The driver of the semi-tractor, trailer, tractor and trailer were escorted to secondary inspection by CBP officers for further examination and interview.

At the Pharr POE, the driver of the tractor trailer was duly advised of his rights pursuant to *Miranda v. Arizona*. The driver indicated that he understood his rights, waived them in writing, and agreed to speak with HSI Special Agents. During questioning, the driver stated that he has been tasked with picking up trailers containing used clothing from CASTILLO at Oro Ropa Usada for export into Mexico for approximately 1 year and a half. The driver further stated that the merchandise in the trailer, which included used clothing, motor oil, and food, was provided to him by CASTILLO and was intended for export to Mexico.

HSI SAs asked the driver whether he possessed any documentation authorizing the legal exportation or importation of the merchandise and he stated that the only document CASTILLO provided to him was a form intended for presentation to Mexican Customs. Upon reviewing the form, HSI SAs identified it as a Mexican importation document but noted several discrepancies, including blank fields for the date and no commodity description. The driver stated that he was instructed by CASTILLO to transport the merchandise to Mexico and was acting under CASTILLO's direction. He further disclosed that the merchandise he transported had an approximate value of $250,000 USD. The driver stated that he is paid $2,500 pesos to deliver the load into Mexico and confirmed that he has previously received payment from CASTILLO and/or BERTHA.

Between September 8, 2025, and September 11, 2025, further inspections conducted by HSI Special Agents and CBP officers revealed various items, including approximately 507 bales of used clothing, 373 five-quart containers of motor oil, and approximately 230 boxes and 302 bags of Indian food.

On September 2, 2025, HSI Special Agent Contreras conducted a query of interagency databases to determine if any exports had been properly declared by ORO ROPA USADA. The query results indicated that no documentation had been submitted to support legal exportation.

On or about September 4, 2025, HSI SAs conducted a non-custodial, consensual interview with CASTILLO and BERTHA at Oro Ropa Usada. Prior to the interview, CASTILLO was informed that his participation was voluntary. During the interview, CASTILLO stated that he and his wife own ORO ROPA USADA and disclosed that he has been engaged in the business of selling used clothing for approximately 20 years and ships used clothing to Mexico 2-4 times a month depending on the season. CASTILLO acknowledged that the shipment detained on September 2, 2025, at the POE for exportation originated from his warehouse and was intended for his Mexico-based customers. CASTILLO stated that the merchandise in the trailer included used clothing, motor oil, and Indian food, with an approximate value of approximately $75,000 USD. When asked how his Mexican customers pay for the merchandise, CASTILLO stated that all payments are made in cash. He explained that his customers wire transfer funds to McAllen and have someone deliver the cash. CASTILLO further stated that the largest amount of cash he has ever received from a customer was $8,500.00 USD.

On September 11, 2025, CASTILLO was contacted and informed that the Indian food from his trailer could be picked up at the Pharr POE if he wished. CASTILLO stated that he would bring a trailer along with two helpers to assist with loading the food. While his helpers were loading

the food, CASTILLO agreed to speak with HSI Special Agents. During the conversation, CASTILLO was asked if he possessed any exportation documentation for the detained shipment. He admitted that he did not. When questioned about his familiarity with the Shipper's Export Declaration ("SED") form, CASTILLO confirmed his awareness of SED requirements, including the $2,500 USD monetary threshold for filing, and stated that he had previously completed SEDs with the assistance of a broker. When asked why an SED was not completed for the detained shipment, CASTILLO stated that he believed the responsibility for filing the required documentation rested with his Mexican customers. Additionally, when asked whether he provided any documentation to the driver of the trailer, CASTILLO admitted that he did not.

HSI accessed ACE Exports in September of 2025 and identified a total of 158 SEDs filed by or on behalf of Oro Ropa Usada, with the earliest filing in 2009 and the most recent in 2021, reflecting consistent export activity over 12 years which shows his knowledge of needing to file them.

On October 2 2025, HSI SAs executed a search and seizure warrant upon a business located at 6613 S. 28th St. McAllen, Texas 78503, an address which houses Oro Ropa Usada. During the execution of this warrant, HSI SA's encountered several individuals employed at the warehouse and were removed from the building. Once outside of the building, HSI questioned numerous individuals working there to determine their identities. HSI SAs thereafter discovered that multiple individuals present at Oro Ropa Usada that were engaged in work and appeared to be present in the United States unlawfully and/or gaining employment in the United States at businesses there without the necessary documents authorizing residence or employment in the United States. HSI SAs interviewed three ("3") individuals who identified themselves as a citizen and national of Mexico, two ("2") of them neither having been lawfully admitted for permanent

residence or authorized to be employed in the United States, and one of them having only a border crossing card, that does not authorize you to work in the United States. Both individuals stated that BERTHA paid them in cash wages on a weekly basis. Both individuals identified BERTHA by photograph as the manager of the business that hired them.

All 3 individuals stated that the manager of "Oro Ropa Usada", BERTHA Castillo hired them knowing and never asked for the necessary documentation to gain employment. Two of the individuals stated that BERTHA hired them approximately 2 and 3 years ago and that BERTHA requested no documentation from them at the time of employment or during their time there and the third individual stated he had been employed for approximately 6 months.